**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
mmatern@maternlawgroup.com
Deanna S. Leifer (SBN 265840)
dleifer@maternlawgroup.com
Kristen B. Doyan (SBN 348257)
kdoyan@maternlawgroup.com
2101 E. El Segundo Blvd., Suite 403
El Segundo, CA 90245
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff DURANT
MCLEOD, individually and on behalf
of all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURANT MCLEOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSUNION, a Delaware corporation; TRANSUNION LLC, a Delaware limited liability company; SALESFORCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Negligence<br>2. Breach of Confidence<br>3. Breach of Implied Contract<br>4. Violation of the California Customer Records Act, Cal. Civil Code § 1798.80, *et seq.*<br>5. Violation of the California Consumer Privacy Act, Cal. Civil Code §1798.100, *et seq.*<br>6. Violation of Unfair Competition Law, California Business and Professional Code § 17200, *et seq.*<br>7. Invasion of Privacy<br>8. Declaratory and Injunctive Relief<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DURANT MCLEOD ("PLAINTIFF"), individually and on behalf of all others similarly situated ("CLASS MEMBERS"), brings this class action against defendants TRANSUNION, a Delaware corporation; TRANSUNION LLC, a Delaware limited liability company (TRANSUNION and TRANSUNION LLC are collectively, "TRANSUNION"); SALESFORCE, INC., a Delaware corporation ("SALESFORCE"), and DOES 1 through 50, inclusive (collectively, "DEFENDANTS"), and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     PLAINTIFF brings this class action against DEFENDANTS for their failure to properly secure and safeguard sensitive personal information including, without limitation, PLAINTIFF's and CLASS MEMBERS' names or other personal identifiers, Social Security numbers, and dates of birth (collectively referred to hereinafter as "personally identifiable information" or "PII").[1]

2.     TRANSUNION is a credit reporting agency and global information and insights company that provides credit portfolio management, fraud prevention, credit reports, and other services.[2]  TRANSUNION has built "robust data and analytics assets" to solve customers' credit risk, marketing and fraud mitigation needs.[3]

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79.  At a minimum, it includes all information that on its face expressly identifies an individual.  PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).
[2] *See* https://www.transunion.com/about-us (last visited September 8, 2025).
[3] *See* TRANSUNION's 2024 Annual Report, https://investors.transunion.com/~/media/Files/T/Transunion-IR-V2/annual-reports/2024/2024-annual-report.pdf (last visited September 8, 2025).

3.    On information and belief, TRANSUNION LLC is a subsidiary of TRANSUNION and shares a headquarters with TRANSUNION in Chicago, Illinois.[4]

4.    SALESFORCE is a software company that provides customer relations management technology to organizations using AI, data tools, and applications for sales, marketing, service, commerce, and information technology.[5]

5.    In order to offer its services, TRANSUNION acquires, possesses, analyzes, and otherwise utilizes PII, including but not limited to names, home addresses, billing addresses, email addresses, telephone numbers, device identification information, IP addresses, Social Security numbers, dates of birth, employment information, and credit card information, among other personal information and identifiers. TRANSUNION acquires such PII via cookies and similar technology, information that users provide to TRANSUNION, advertising partners, banks and credit unions, collection agencies, other credit reporting agencies, financial technology companies, insurance companies, and other sources.[6]

6.    On or around September 5, 2025, PLAINTIFF received a notice of data breach in the mail ("Notice Letter") from TRANSUNION informing PLAINTIFF that a cyber incident resulted in the unauthorized access of PLAINTIFF's personal data that was stored on a third party application used by TRANSUNION (the "Data Breach"), implicating PLAINTIFF's  Social Security

---

[4] *See* https://www.consumerfinance.gov/enforcement/actions/transunion-trans-union-llc-and-transunion-interactive-inc/#:~:text=On%20October%2012%2C%202023%2C%20the,for%20example%2C%20apply%20for%20credit (last visited September 8, 2025).
[5] *See* https://www.salesforce.com/products/what-is-salesforce/ (last visited September 8, 2025).
[6] *See* https://www.transunion.com/privacy/transunion#1 (last visited September 8, 2025).

number and date of birth.[7]    TRANSUNION reported that the breach impacted **4,461,511** individuals.[8]

7.    On information and belief, TRANSUNION is a client of SALESFORCE and the third party application from which the hackers accessed the PII that TRANSUNION was in possession of was SALESFORCE.[9]

8.    Noticeably absent from the Notice Letter are details of the root cause of the Data Breach, the vulnerabilities that were exploited, and the specific remedial measures that DEFENDANTS undertook to ensure such a breach does not happen again.    To date, these critical facts have not been explained or clarified to PLAINTIFF or CLASS MEMBERS, who have a vested interest in ensuring that their PII remains protected.

9.    While TRANSUNION claims to have discovered the breach as early as July 30, 2025, PLAINTIFF and CLASS MEMBERS were wholly unaware of the Data Breach until they learned of it *after* the Notice Letter was mailed on August 26, 2025.    During this time, PLAINTIFF and CLASS MEMBERS were unaware that their PII had been compromised, and that they were—and continue to be—at risk of identity theft and various other forms of personal, social, and financial harm.

10.    As business entities doing business in California and/or having customers in California, DEFENDANTS are legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction.

---

[7] Sample Notice Letter available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 8, 2025).
[8] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 8, 2025).
[9] *See* https://www.wltx.com/article/news/nation-world/transunion-data-breach/507-864dc4d6-67e7-477b-9240-6d2bba18dbb2 (last visited September 8, 2025); https://www.foxnews.com/tech/transunion-becomes-latest-victim-major-wave-salesforce-linked-cyberattacks-4-4m-americans-affected (last visited September 8, 2025).

11.    DEFENDANTS derive a substantial economic benefit from collecting PLAINTIFF's and CLASS MEMBERS' PII.  Without it, DEFENDANTS could not perform their services.

12.    By obtaining, collecting, using, and deriving a benefit from PLAINTIFF's and CLASS MEMBERS' PII, DEFENDANTS assumed legal and equitable duties to ensure the protection of that PII, and they knew or should have known that they were thus responsible for protecting PLAINTIFF's and CLASS MEMBERS' PII from disclosure.  These duties arise from state and federal statutes and regulations, and common law principles.

13.    DEFENDANTS had a duty to adopt reasonable measures to protect the PII of PLAINTIFF and CLASS MEMBERS from involuntary disclosure to third parties and to audit, monitor, and verify the integrity of their vendors and affiliates for their own cybersecurity.  DEFENDANTS have a legal duty to keep PII safe and confidential.

14.    PLAINTIFF brings this action on behalf of himself and the *millions* of other persons whose PII was compromised as a result of DEFENDANTS' failure to: (i) adequately protect the PII of PLAINTIFF and CLASS MEMBERS; (ii) warn PLAINTIFF and CLASS MEMBERS of DEFENDANTS' inadequate information security practices; and (iii) effectively secure hardware and software containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents.  DEFENDANTS' conduct amounts to, among other things, negligence, and violates state and federal statutes.

15.    PLAINTIFF further seeks to hold DEFENDANTS responsible for not ensuring that they maintained the PII in a manner consistent with industry standards.

16.    PLAINTIFF and CLASS MEMBERS must now closely monitor their personal accounts to guard against future identity theft and fraud.  PLAINTIFF and CLASS MEMBERS have heeded such warnings to mitigate against the imminent

and future risk of identity theft and financial loss. Such mitigation efforts included and will include into the future: (i) reviewing financial statements; (ii) changing passwords; and (iii) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

17.     PLAINTIFF and CLASS MEMBERS have suffered injury as a result of DEFENDANTS' conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the disclosure of their private information; (v) loss of access to their money and financial accounts; and (vi) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in DEFENDANTS' possession and is subject to further unauthorized disclosures so long as DEFENDANTS fail to undertake appropriate and adequate measures to protect the PII of PLAINTIFF and CLASS MEMBERS.

18.     DEFENDANTS disregarded the rights of PLAINTIFF and CLASS MEMBERS by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of PLAINTIFF and CLASS MEMBERS was safeguarded; failing to take available steps to prevent an unauthorized disclosure of data; and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of PLAINTIFF and CLASS MEMBERS was compromised through disclosure to an unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding PLAINTIFF and CLASS MEMBERS in the future. PLAINTIFF and CLASS

MEMBERS have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

19.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction).   Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one CLASS MEMBER, including PLAINTIFF, is a citizen of a state different from DEFENDANTS, establishing minimal diversity.

20.    Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

21.    The Central District of California has personal jurisdiction over DEFENDANTS because they conduct substantial business in California and this District and acquired, collected and/or stored the PII of PLAINTIFF and CLASS MEMBERS in this District.

22.    Venue is proper in this District under 28 U.S.C. §1391(b) because DEFENDANTS operate in this District and a substantial part of the events or omissions giving rise to PLAINTIFF's claims occurred in this District, including DEFENDANTS acquiring, collecting and/or storing the PII of PLAINTIFF and CLASS MEMBERS.

## THE PARTIES

23.    PLAINTIFF is a citizen and resident of the State of California residing in Los Angeles, California.   PLAINTIFF received the Notice Letter from TRANSUNION on or around September 5, 2025.

24.    TRANSUNION is a credit reporting agency and global information and insights company that provides credit portfolio management, fraud prevention, credit reports, and other services.

25.     SALESFORCE is a software company that services organizations by providing various data tools, AI, and applications to aid organizations in managing sales, marketing, commerce, and information technology on one platform.

26.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to PLAINTIFF.  PLAINTIFF will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

27.     All of PLAINTIFF's claims stated herein are asserted against DEFENDANTS and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns.

## **FACTUAL ALLEGATIONS**

### **A. Background**

28.     TRANSUNION, as a credit reporting agency, collects and stores PII in connection with the services it provides, including allowing its customers to verify identities based on PII it has acquired about third party individuals.

29.     On information and belief, TRANSUNION is a client of SALESFORCE and the Data Breach is linked to a series of cyber-attacks targeting SALESFORCE applications.[10]

30.     PLAINTIFF's and CLASS MEMBERS' PII was among the data an unauthorized third party accessed during the Data Breach.

31.     On its website, TRANSUNION states that it maintains "a comprehensive information security program with administrative (policies, standards, and processes), physical, and technical controls designed to protect the confidentiality, integrity, and accessibility of personal information".[11]

---

[10] https://www.9news.com/article/news/nation-world/transunion-data-breach/507-864dc4d6-67e7-477b-9240-6d2bba18dbb2 (last visited September 8, 2025).
[11] https://www.transunion.com/privacy/transunion (last visited September 8, 2025).

32.    TRANSUNION also acknowledges "that "[d]ata security and stewardship is vital to consumer protection and enabling trust," and claims to "continually invest in improvements to protect the data we hold on behalf of consumers and businesses."[12]  Transunion further explains that it "secure[s] and protect[s] the information entrusted to [it] by building, monitoring and defending security ecosystem built on a foundation of compliance and accountability. We proactively manage our programs and continuously invest to secure the data we hold on behalf of consumers and businesses."[13]

33.    Additionally, SALESFORCE claims that its "top priority is the security and privacy of the data [it is] entrusted to protect," and even states that its cloud services are specifically "designed to help customers comply with privacy laws around the world."[14]

34.    Accordingly, PLAINTIFF and CLASS MEMBERS reasonably relied on these sophisticated DEFENDANTS to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information, in accordance with applicable laws and regulations and their own policies.  PLAINTIFF and CLASS MEMBERS demand security to safeguard their PII.  Further, as corporations doing business globally, including in California, DEFENDANTS are legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use or destruction.

35.    DEFENDANTS had a duty to adopt reasonable measures to protect the PII of PLAINTIFF and CLASS MEMBERS from involuntary disclosure to third parties.

---

[12] https://www.transunion.com/client-support/data-security (last visited September 8, 2025).
[13] *Id.*
[14] https://www.salesforce.com/company/legal/privacy/ (last visited September 8, 2025).

36.     PLAINTIFF and CLASS MEMBERS have taken reasonable steps to maintain the confidentiality of their PII.

**B. The Data Breach**

37.     On July 30, 2025, TRANSUNION purportedly discovered that, on July 28, 2025, and unauthorized third party accessed PLAINTIFF's and CLASS MEMBERS' sensitive PII, including but not limited to names, Social Security numbers, dates of birth, or other personal identifiers.[15]     According to TRANSUNION, **4,461,511** individuals' PII was impacted by the Data Breach.[16]

38.     TRANSUNION alleges that it continues to enhance security measures to reduce the risk of future cyber-attacks, but notably fails to acknowledge whether any investigation into the cyberattack has been initiated, whether it notified law enforcement of the cyber-attack, or what specific steps it took to review its security controls.[17]

39.     On August 26, 2025, TRANSUNION mailed the Notice Letter to PLAINTIFF and CLASS MEMBERS.[18]

40.     TRANSUNION's Notice Letter contains only cursory information about the Data Breach, and TRANSUNION has continued to provide few, if any, detailed specifics about the root cause of the Data Breach to the public and/or individuals impacted, or remedial measures taken.

41.     Although TRANSUNION purportedly became aware of the breach and verified its occurrence on or around July 30, 2025, TRANSUNION waited almost a full month to disclose this Data Breach to impacted individuals.

---

[15] *See* Sample Notice Letter; https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 8, 2025).
[16] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 8, 2025).
[17] *See* Sample Notice Letter.
[18] *See* Sample Notice Letter.

42.    The exposure of PLAINTIFF's and CLASS MEMBERS' PII to an unauthorized third party was a direct and proximate result of DEFENDANTS' failure to properly safeguard and protect PLAINTIFF's and CLASS MEMBERS' PII from unauthorized access, use, and disclosure, as required under state and federal law.  Upon information and belief, the Data Breach was also a result of DEFENDANTS' failure to establish and implement appropriate administrative, technical, and physical safeguards in accordance with its own policies and industry standards to ensure the security and confidentiality of PLAINTIFF's and CLASS MEMBERS' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by federal and state statutes and regulations.

43.    PLAINTIFF's and CLASS MEMBERS' PII is private and sensitive in nature and was inadequately protected by DEFENDANTS.  DEFENDANTS did not obtain PLAINTIFF's and CLASS MEMBERS' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

44.    As a direct and proximate result of DEFENDANTS' wrongful actions and inaction and the resulting Data Breach, PLAINTIFF and CLASS MEMBERS have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject Data Breach on their lives by, among other things, paying for credit and identity monitoring services, spending time on credit and identity monitoring, placing "freezes" and "alerts" with credit reporting agencies, contacting their personal and financial institutions, and closely reviewing and monitoring their credit reports and financial accounts for unauthorized activity.

45.    The unencrypted PII of PLAINTIFF and CLASS MEMBERS may end up for sale on the dark web or fall into the possession of companies that will use the

PII for targeted marketing without the approval of PLAINTIFF and CLASS MEMBERS. Unauthorized individuals can easily access that PII.

46. DEFENDANTS did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for PLAINTIFF and CLASS MEMBERS, causing the exposure of PLAINTIFF's and CLASS MEMBERS' PII.

47. Because DEFENDANTS had a duty to protect PLAINTIFF's and CLASS MEMBERS' PII, DEFENDANTS should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information, but failed to do so.

**C. DEFENDANTS Acquire, Collect, and Store the PII of PLAINTIFF and CLASS MEMBERS**

48. According to TRANSUNION, its database of credit histories covers *more than 260,000,000* adults in the United States and is supported by its network of over 85,000 finance companies, banks, credit unions, retailers, student loan companies, and debt buyers, and that database consists of the personal records that it has acquired, collected, and stored.[19]

49. TRANSUNION acquired, collected, and stored the PII of PLAINTIFF and CLASS MEMBERS.

50. On information and belief, TRANSUNION made the PII of PLAINTIFF and CLASS MEMBERS available or otherwise accessible in or through SALESFORCE.

51. By acquiring, collecting, and storing the PII of PLAINTIFF and CLASS MEMBERS, DEFENDANTS assumed legal and equitable duties and knew

---

[19] *See* https://www.transunion.com/blog/credit-data-economic-population-research#:~:text=Credit%20data%20is%20reported%20to,the%20Credit%20Data%20Industry%20Association (last visited September 8, 2025).

or should have known that they were responsible for protecting the PII from disclosure.

52.     PLAINTIFF and CLASS MEMBERS have taken reasonable steps to maintain the confidentiality of their PII and relied on DEFENDANTS to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**D. The Data Breach Was Foreseeable**

53.     DEFENDANTS' security obligations were particularly important in light of the substantial increase in cyberattacks and/or data breaches across companies holding significant amounts of PII, preceding the date of breach.

54.     TRANSUNION's website has an entire webpage detailing its purported data security program, including its 24/7/365 Security Operations Center and its Third Party Risk Management Program.[20] TRANSUNION also released a 2024 Global Impact Report listing cybersecurity as one of its top operations.[21]

55.     Furthermore, SALESFORCE provides global privacy resources for its customers, purporting to instruct other companies on the best privacy and data collection practices.[22]

56.     Thus, at all relevant times, DEFENDANTS knew—or should have known—that PLAINTIFF's and CLASS MEMBERS' PII was a target for malicious actors. Despite such knowledge, DEFENDANTS failed to implement and maintain reasonable and appropriate data privacy and security measures to protect PLAINTIFF's and CLASS MEMBERS' PII from cyberattacks that DEFENDANTS should have anticipated and guarded against.

---

[20] *See* https://www.transunion.com/client-support/data-security (last visited September 8, 2025).
[21] *See* https://www.transunion.com/content/dam/transunion/global/business/documents/2024-global-impact-report.pdf, p. 9 (last visited September 8, 2025).
[22] https://www.salesforce.com/privacy/overview/ (last visited September 8, 2025).

57.     Indeed, in addition to DEFENDANTS' own resources and knowledge regarding cybersecurity, in 2016 the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.  The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[23]  The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[24]

58.     The FTC further recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested security measures; and verify that third-party service providers have implemented reasonable security measures.

59.     DEFENDANTS failed to properly implement reasonable security measures.

60.     DEFENDANTS were at all times aware of their obligation to protect the PII they acquired, collected, and stored, and were aware of the significant consequences that would result from their failure to implement proper security measures.

///

///

---

[23] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protetingpersonal-information.pdf (last visited September 8, 2025).

[24] *Id*.

### E. Securing PII and Preventing Data Breaches

61.     DEFENDANTS could have prevented this Data Breach by properly securing and encrypting the folders, files, and/or data fields containing PLAINTIFF's and CLASS MEMBERS' PII.  Alternatively, DEFENDANTS could have destroyed any data they no longer needed to maintain.

62.     Despite the prevalence of such data breaches and publicly available information regarding preventing such data breaches and safeguarding sensitive personal information, DEFENDANTS failed to take appropriate steps to protect the PII of PLAINTIFF and CLASS MEMBERS.

63.     The consequences of DEFENDANTS' failure to properly protect PLAINTIFF's and CLASS MEMBERS' PII are severe and long lasting, including the imminent and ongoing threats of identity theft and identity fraud.

64.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[25]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[26]

65.      Once PII is stolen, especially Social Security numbers, identity theft and other fraudulent use of the PII may continue to damage victims of data breaches for years.

### F.  The Value of Personally Identifiable Information

66.     PII is highly valuable to criminals, who will pay high prices to acquire such data.  Sources citing dark web pricing for PII claim that access to entire

---

[25] 17 C.F.R. § 248.201 (2013).
[26] *Id.*

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO BLVD.,
SUITE 403
EL SEGUNDO, CA 90245

CLASS ACTION COMPLAINT

company databases from breaches can be sold in the range of $900.00 to $4,500,00.[27]

67. Unlike credit card data breaches which can be remedied through cancellation of credit cards or closing of accounts, the PII compromised in the Data Breach is significantly more valuable as it cannot be "cancelled" or "closed," and is difficult at best to change.

68. This data demands a much higher price on the black market. Cybersecurity experts have explained that PII and Social Security numbers are *more than 10 times* the value of credit card information on the black market.[28]

69. The fraudulent activity resulting from the Data Breach may not come to light for years.

70. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[29]

71. At all relevant times, DEFENDANTS knew, or reasonably should have known, of the importance of safeguarding the PII of PLAINTIFF and CLASS MEMBERS, including but not limited to Social Security numbers, and of the foreseeable consequences that would occur if DEFENDANTS' data security system

---

[27] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited September 8, 2025).
[28] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited September 8, 2025).
[29] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at*: https://www.gao.gov/assets/gao-07-737.pdf (last visited September 8, 2025).

was breached, including, specifically, the significant costs that would be imposed on PLAINTIFF and CLASS MEMBERS as a result of a breach.

72.     PLAINTIFF and CLASS MEMBERS now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. PLAINTIFF and CLASS MEMBERS are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

73.     DEFENDANTS were, or should have been, fully aware of the unique type and the significant volume of data contained in DEFENDANTS' databases, amounting to hundreds of millions of individuals' detailed personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

74.     To date, TRANSUNION has offered PLAINTIFF and CLASS MEMBERS 24 months of credit monitoring.  The offered service is inadequate to protect PLAINTIFF and CLASS MEMBERS from the threats they face for years to come, particularly in light of the particular PII at issue here; namely Social Security numbers and dates of birth.

75.     The injuries to PLAINTIFF and CLASS MEMBERS were directly and proximately caused by DEFENDANTS' failure to implement and/or maintain adequate data security measures for the PII of PLAINTIFF and CLASS MEMBERS.

**G. PLAINTIFF and CLASS MEMBERS Suffered Damages**

76.     PLAINTIFF has a TRANSUNION account that he uses to actively monitor his credit activity and potential identity theft.  It is PLAINTIFF's understanding that TRANSUNION acquired his PII through his account as well as in the course of conducting its business.  PLAINTIFF received the Notice Letter on or around September 5, 2025 stating that his PII, including his Social Security Number and date of birth, had been compromised.

77.     As a result of the Data Breach, PLAINTIFF and CLASS MEMBERS

have spent time dealing with the consequences of the Data Breach, which includes self-monitoring personal accounts, verifying the legitimacy of the Data Breach, and exploring credit monitoring and identity theft insurance options.

78.   PLAINTIFF and CLASS MEMBERS have suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and have anxiety and increased concerns for loss of their privacy.

79.   DEFENDANTS' wrongful actions and inaction directly and proximately cause the theft and dissemination into the public domain of PLAINTIFF's and CLASS MEMBERS' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.   The improper disclosure and theft of their PII;

    b.   The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being exposed to and misused by unauthorized third-party;

    c.   The untimely and inadequate notification of the Data Breach;

    d.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach; and

    e.   Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market.

## CLASS ACTION ALLEGATIONS

80.   PLAINTIFF brings this class action under the Federal Rules of Civil Procedure (F.R.C.P.), Rule 23(a), (b)(2), and (b)(3) individually and on behalf of all members of the following nationwide class (the "Nationwide Class") :

All individuals residing in the United States whose PII was compromised in the data breach discovered by TRANSUNION

on or around July 30, 2025, including all those individuals who received notice of the breach.

81.    PLAINTIFF also proposes the following California subclass ("California Subclass"):

> All individuals residing in California whose PII was compromised in the data breach discovered by TRANSUNION on or around July 30, 2025, including all those individuals who received notice of the breach.

82.    Together, the Nationwide Class and California Subclass members are hereinafter referred to as the "CLASS MEMBERS" or the "Class."

83.    Excluded from the Class are DEFENDANTS, their agents, affiliates, parents, subsidiaries, any entity in which DEFENDANTS have a controlling interest, any officer or director of DEFENDANTS, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

84.    PLAINTIFF reserves the right to amend the class and subclass definitions and/or represent additional subclasses as appropriate, including based on the types of PII that were compromised.

85.    This action has been brought and may be maintained under F.R.C.P. Rule 23 because PLAINTIFF and the Class constitute a well-defined community of interest; they are similarly situated persons and were similarly affected and damaged by the alleged conduct of DEFENDANTS.

86.    Certification of PLAINTIFF's claims for class-wide treatment is appropriate because PLAINTIFF can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

87.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in DEFENDANTS' custody and control. DEFENDANTS have already identified some individuals and sent them the Notice Letters regarding the Data Breach.

88.  Numerosity. The Class is so numerous that joinder of all CLASS MEMBERS is impracticable.  The disposition of the claims of the Class in a single action will provide substantial benefits to all parties and to the Court. TRANSUNION reported to the Maine Attorney General that Data Breach affected **4,461,511** individuals.  Thus, the CLASS MEMBERS are numerous and readily identifiable from information and records in DEFENDANTS' possession, custody, or control.

89.  Typicality. PLAINTIFF's claims are typical of the Class' claims as each arises from the same Data Breach, the same alleged violations by DEFENDANTS, and the same unreasonable manner of notifying individuals about the Data Breach.

90.  Adequacy. PLAINTIFF will fairly and adequately protect the proposed Class' common interests.  PLAINTIFF's interests do not conflict with CLASS MEMBERS' interests.  PLAINTIFF has retained counsel that is experienced in complex class action litigation to prosecute this action on the Class' behalf.

91.  Commonality and Predominance. PLAINTIFF and the Class' claims raise predominantly common fact and legal questions – which  predominate over any questions affecting individual CLASS MEMBERS, for which a class wide proceeding can answer for all CLASS MEMBERS.  A classwide proceeding is necessary to answer the following questions:

    a. Whether DEFENDANTS had a duty to use reasonable care in safeguarding PLAINTIFF's and CLASS MEMBERS' PII;

    b. Whether DEFENDANTS failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c. Whether DEFENDANTS were negligent in maintaining, protecting, and securing PII;

d. Whether DEFENDANTS breached contract promises to safeguard PLAINTIFF's and CLASS MEMBERS' PII;

e. Whether DEFENDANTS took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether DEFENDANTS' Notice Letter was reasonable;

g. Whether the Data Breach caused PLAINTIFF and CLASS MEMBERS injuries;

h. What the proper damages measure is; and

i. Whether PLAINTIFF and CLASS MEMBERS are entitled to damages, treble damages, and/or injunctive relief.

92. <u>Superiority</u>. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual CLASS MEMBERS are relatively small compared to the burden and expense that individual litigation against DEFENDANTS would require. Thus, it would be practically impossible for CLASS MEMBERS, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

93. Unless a Class-wide injunction is issued, DEFENDANTS may continue failing to secure CLASS MEMBERS' PII properly, and DEFENDANTS may continue to act unlawfully, as set forth in this complaint.

94. Further, DEFENDANTS have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or

1   corresponding declaratory relief with regard to the CLASS MEMBERS as a whole

2   is appropriate under F.R.C.P. Rule 23(b)(2).

3   **FIRST CAUSE OF ACTION**

4   **Negligence**

5   **(On behalf of PLAINTIFF and the Class)**

6   95.     PLAINTIFF incorporates herein by specific reference, as though fully

7   set forth, the allegations in the foregoing paragraphs.

8   96.     At all times herein relevant, DEFENDANTS owed PLAINTIFF and

9   the Class a duty of care, *inter alia*, to act with reasonable care to secure and

10  safeguard their PII and to use commercially reasonable methods to do so.

11  DEFENDANTS took on this obligation upon acquiring, accepting, collecting,

12  and/or storing PLAINTIFF's and CLASS MEMBERS' PII on their computer

13  systems, databases, and networks.

14  97.     DEFENDANTS owed a duty of care to PLAINTIFF and the Class

15  because it was foreseeable that DEFENDANTS' failure to use adequate data

16  security in accordance with industry standards for data security would compromise

17  their PII in a data breach.  And here, that foreseeable danger came to pass.

18  98.     As detailed above, DEFENDANTS have full knowledge of the

19  sensitivity of the PII and the types of harm that PLAINTIFF and the Class would

20  suffer if their PII was wrongfully disclosed.

21  99.     DEFENDANTS owed these duties to PLAINTIFF and CLASS

22  MEMBERS because they are members of a well-defined, foreseeable, and probable

23  class of individuals whom DEFENDANTS knew or should have known would

24  suffer injury-in-fact from DEFENDANTS' inadequate security practices.

25  DEFENDANTS actively sought and obtained PLAINTIFF's and CLASS

26  MEMBERS' PII in connection with providing their services.

27  100.    DEFENDANTS owed to PLAINTIFF and CLASS MEMBERS at least

28  the following duties to:

a.  Exercise reasonable care in handling and using the PII in their care and custody;

b.  Implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized access;

c.  Promptly detect attempts at unauthorized access; and

d.  Promptly notify PLAINTIFF and the Class within a reasonable timeframe of any breach to the security of their PII.

101.  DEFENDANTS knew or should have known that the PII was private and confidential and should be protected as private and confidential and, thus, DEFENDANTS owed a duty of care to not subject PLAINTIFF and CLASS MEMBERS to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

102.  DEFENDANTS knew or should have known of the risks inherent in collecting and storing PII, the vulnerabilities of their data security systems and the importance of adequate security.  DEFENDANTS knew or should have known about numerous well-publicized data breaches.

103.  DEFENDANTS knew or should have known that their data systems and networks did not adequately safeguard PLAINTIFF's and CLASS MEMBERS' PII.

104.  Only DEFENDANTS were in the position to ensure that their systems and protocols were sufficient to protect the PII that PLAINTIFF and CLASS MEMBERS that they acquired, collected, and stored.

105.  DEFENDANTS breached their duties to PLAINTIFF and CLASS MEMBERS by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PII.

106.  Because DEFENDANTS knew that a breach of their systems could damage numerous individuals, including PLAINTIFF and the Class,

DEFENDANTS had a duty to adequately protect their data systems and the PII stored thereon.

107. DEFENDANTS failed to take adequate security precautions. Moreover, only DEFENDANTS could protect their systems and the PII they stored on them from attack. Thus, DEFENDANTS had a special relationship with PLAINTIFF and CLASS MEMBERS.

108. DEFENDANTS also had independent duties under state and federal laws that required DEFENDANTS to reasonably safeguard PLAINTIFF's and CLASS MEMBERS' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between DEFENDANTS, PLAINTIFF, and/or the CLASS MEMBERS.

109. DEFENDANTS breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the PII of PLAINTIFF and CLASS MEMBERS which actually and proximately caused the Data Breach and PLAINTIFF's and CLASS MEMBERS' injury.

110. DEFENDANTS further breached their duties by failing to provide reasonably timely notice of the Data Breach to PLAINTIFF and CLASS MEMBERS so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII, which actually and proximately caused and exacerbated the harm from the Data Breach and PLAINTIFF's and CLASS MEMBERS' injuries-in-fact.

111. DEFENDANTS have admitted that the PII of PLAINTIFF and CLASS MEMBERS was accessed by an unauthorized third party because of the Data Breach. However, to date, DEFENDANTS have not provided adequate information regarding the extent of the unauthorized access and continue to breach their disclosure obligations to PLAINTIFF and CLASS MEMBERS.

112.   DEFENDANTS' failure to provide timely and clear notification of the Data Breach has also prevented PLAINTIFF and CLASS MEMBERS from taking meaningful, proactive steps to protect their PII.

113.   DEFENDANTS' willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

114.   As a direct and traceable result of DEFENDANTS' negligence and/or negligent supervision, PLAINTIFF and CLASS MEMBERS are at imminent risk of additional harm and damages (as alleged above) and have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, anxiety, and emotional distress.

115.   There is a close causal connection between DEFENDANTS' failure to implement security measures to protect PLAINTIFF's and CLASS MEMBERS' PII and the harm (or risk of imminent harm) suffered by PLAINTIFF and CLASS MEMBERS.

116.   Additionally, 15 United Stated Code (U.S.C.) section 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce…" including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as DEFENDANTS, of failing to use reasonable measures to protect PII.  The FTC's various publications and orders on this subject also form part of the basis of DEFENDANTS' duty in this regard.

117.   DEFENDANTS violated 15 U.S.C. section 45 by failing to protect PLAINTIFF's and CLASS MEMBERS' PII and by not complying with applicable industry standards, as described in detail herein.  DEFENDANTS' conduct was particularly unreasonable in light of the volume of PII they acquire, collect, and stores in the course of their business and the foreseeable consequences of the immense damages that would result to PLAINTIFF and CLASS MEMBERS.

118.   DEFENDANTS' breach of their common law duties to exercise reasonable care and their failures and negligence actually and proximately caused

CLASS ACTION COMPLAINT

PLAINTIFF and CLASS MEMBERS actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by DEFENDANTS' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

119.    As a direct and proximate result of DEFENDANTS' violation of the U.S.C., PLAINTIFF and CLAS MEMBERS have suffered and will continue to suffer other forms of injury and/or harm including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

120.    Additionally, as a direct and proximate result of DEFENDANTS' negligence, PLAINTIFF and CLASS MEMBERS have suffered and will continue to suffer the continued risk of their PII, which remains in DEFENDANTS' possession and is subject to further unauthorized access so long as DEFENDANTS fail to undertake appropriate and adequate security measures to protect PII in their possession.

## SECOND CAUSE OF ACTION

### Breach of Confidence

### (On Behalf of PLAINTIFF and the Class)

121.    PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

122.    DEFENDANTS were fully aware of the confidential nature of the PII of PLAINTIFF AND CLASS MEMBERS that they acquired, collected and stored in the course of their business and to provide their services to customers.

123.    As alleged herein and above, DEFENDANTS' relationship with PLAINTIFF and CLASS MEMBERS was governed by obligations and expectations that PLAINTIFF's and CLASS MEMBERS' PII would be collected,

stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

124.   As explained herein, DEFENDANTS actively acquired, collected, and stored PLAINTIFF's and CLASS MEMBERS' PII, giving rise to PLAINTIFF and CLASS MEMBERS reasonable expectation that DEFENDANTS would safeguard their PII.  DEFENDANTS' acquiring, collecting, and storing of PLAINTIFF's and CLASS MEMBERS' PII also resulted in DEFENDANTS' legal obligation to protect and not permit the PII to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

125.   PLAINTIFF and CLASS MEMBERS also had the explicit and implicit understanding that DEFENDANTS would take precautions to protect their PII from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

126.   Due to DEFENDANTS' failure to prevent, detect and avoid the Data Breach from occurring by, *inter alia*, not implementing appropriate safeguards and not following best information security practices to secure PLAINTIFF's and CLASS MEMBERS' PII, PLAINTIFF's and CLASS MEMBERS' PII was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond PLAINTIFF's AND CLASS MEMBERS' confidence and without their express permission.

127.   As a direct and proximate cause of DEFENDANTS' actions and/or omissions, PLAINTIFF and CLASS MEMBERS have suffered damages, as alleged herein.

128.   But for DEFENDANTS' failure to maintain and protect PLAINTIFF's and CLASS MEMBERS' PII in violation of the parties' understanding of confidence, their PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.  The Data Breach was the direct and legal cause of the misuse of PLAINTIFF's and CLASS MEMBERS' PII and the resulting damages.

129.   The injury and harm PLAINTIFF and CLASS MEMBERS suffered and will continue to suffer was the reasonably foreseeable result of DEFENDANTS' unauthorized misuse of PLAINTIFF's and CLASS MEMBERS' PII.  DEFENDANTS knew their data systems and protocols for obtaining, storing, and securing PLAINTIFF's and CLASS MEMBERS' PII had security and other vulnerabilities that placed PLAINTIFF's and CLASS MEMBERS' PII in jeopardy.

130.   As a direct and proximate result of DEFENDANTS' breaches of confidence, PLAINTIFF and CLASS MEMBERS have suffered and will continue to suffer injury, as alleged herein, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PII, (iii) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of their PII, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (v) the continued risk to their PII, which remains in DEFENDANTS' possession and is subject to further unauthorized disclosures so long as DEFENDANTS fails to undertake appropriate and adequate measures to protect PLAINTIFF's and CLASS MEMBERS' PII in their continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of PLAINTIFF and CLASS

MEMBERS, and (vii) the diminished value of PLAINTIFF's and CLASS MEMBERS' PII.

## THIRD CAUSE OF ACTION

### Breach of Implied Contract

### (On Behalf of PLAINTIFF and the Class)

131.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

132.   SALESFORCE entered into contracts with its clients, including TRANSUNION, to provide its clients with SALESFORCE's software services.

133.   PLAINTIFF and CLASS MEMBERS were beneficiaries of these contracts, and DEFENDANTS agreed to protect and safeguard PLAINTIFF's and CLASS MEMBERS' PII and to timely and adequately notify PLAINTIFF and CLASS MEMBERS of any unauthorized exposure or access to their PII.

134.   DEFENDANTS acquired, collected, and stored the PII of PLAINTIFF and CLASS MEMBERS, as alleged herein.  In at least some cases, PLAINTIFF and CLASS MEMBERS provided their PII to TRANSUNION or their third-party agents in exchange for DEFENDANTS' products and/or credit reporting services.

135.   In order for DEFENDANTS to provide their services, PLAINTIFF and CLASS MEMBERS were required to authorize the transfer or submission of their PII.

136.   In their regular course of business, DEFENDANTS, requested and required that PLAINTIFF and CLASS MEMBERS provide their PII, and/or DEFENDANTS acquired CLASS MEMBERS' PII without their consent as part of their regular business practice.

137.   When DEFENDANTS acquired and collected PLAINTIFF's and CLASS MEMBERS' PII, they entered into implied contacts with PLAINTIFF and CLASS MEMBERS wherein PLAINTIFF and CLASS MEMBERS reasonably

understood that their PII would be protected and safeguarded in accordance with DEFENDANTS' policies, applicable laws, and industry standards.

138.   PLAINTIFF and CLASS MEMBERS reasonably understood that DEFENDANTS would undertake adequate cybersecurity measures to protect their PII pursuant to DEFENDANTS' duties under state and federal law and their internal policies.

139.   Through internal policies, DEFENDANTS agreed to protect and not disclose the PII of PLAINTIFF and CLASS MEMBERS to unauthorized persons.

140.   Implicit in the parties' agreements was that DEFENDANTS would provide PLAINTIFF and CLASS MEMBERS with prompt and adequate notice of all unauthorized access and/or theft of their PII.

141.   PLAINTIFF and CLASS MEMBERS would not have entrusted their PII to DEFENDANTS in the absence of such an agreement with DEFENDANTS.

142.   PLAINTIFF and CLASS MEMBERS fully performed their obligations under the implied contracts with DEFENDANTS.

143.   The covenant of good faith and fair dealing is an element of every contract.  Thus, parties must act with honesty in fact in the conduct or transactions concerned.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit-and not merely the letter-of the bargain.  In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

144.   Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or consist of inaction.  And fair dealing may require more than honesty.

145.   DEFENDANTS materially breached the contracts they entered with PLAINTIFF and CLASS MEMBERS by:

e.      Failing to safeguard PLAINTIFF's and CLASS MEMBERS' PII;

f.      Failing to notify PLAINTIFF and CLASS MEMBERS promptly of the intrusion into its computer systems that compromised such information;

g.      Failing to comply with industry standards;

h.      Failing to comply with the legal obligations necessarily incorporated into the agreements; and

i.      Failing to ensure the confidentiality and integrity of the electronic PII that DEFENDANTS created, received, collected, maintained, and/or transmitted.

146.   In these and other ways, DEFENDANTS violated their duty of good faith and fair dealing.

147.   DEFENDANTS' material breaches were the direct and proximate cause of PLAINTIFF and CLASS MEMBERS' injuries (as detailed supra).

148.   And, on information and belief, PLAINTIFF's PII has already been published-or will be published imminently-by cybercriminals on the Dark Web.

149.   PLAINTIFF and CLASS MEMBERS performed as required under the relevant agreements, or such performance was waived by DEFENDANTS' conduct.

## **FOURTH CAUSE OF ACTION**

### **Violation of the California Customer Records Act**

### **[Cal. Civil Code § 1798.80 *et seq.*]**

### **(On Behalf of PLAINTIFF and the California Subclass)**

150.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

151.   California Civil Code section 1798.81.5(b) requires that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

152.   PLAINTIFF and the California Subclass are "customer[s]" within the meaning of California Civil Code section 1798.80(c) and are California residents.

153.   TRANSUNION is a "business" within the meaning of California Civil Code section 1798.80(a).

154.   SALESFORCE is a "business" within the meaning of California Civil Code section 1798.80(a).

155.   PLAINTIFF's and the California Subclass' PII constitutes "personal information" within the meaning of California Civil Code section 1798.80(e).

156.   DEFENDANTS violated California Civil Code section 1798.81.5(b) by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PLAINTIFF's and the California Subclass' PII from unauthorized access, destruction, use, modification, or disclosure as evidenced by the fact that the security of PLAINTIFF's and the California Subclass' PII, including but not limited to highly sensitive information such as Social Security numbers, was compromised and exposed to at least one unauthorized party and perhaps more.

157.   Under the California Consumer Records Act ("CCRA"), any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.*

158.   DEFENDANTS further violated the CCRA by failing to notify PLAINTIFF and the California Subclass of the Data Breach in an "expedient"

manner, without unreasonable delay.  Indeed, TRANSUNION admitted to having discovered the Data Breach on July 30, 2025, but failed to send notification of such breach to PLAINTIFF and the California Subclass until nearly a full month later.[30]

159.  As a direct and proximate result of DEFENDANTS' violations of California Civil Code section 1798.81.5(b), PLAINTIFF's and the California Subclass' PII was compromised and exposed in connection with the Data Breach, and PLAINTIFF and the California Subclass were unable to attempt to remedy the Data Breach in a timely manner.

160.  As a result of the Data Breach and the exposure of their PII to unauthorized third-parties, PLAINTIFF and the California Subclass have been placed at an imminent, immediate, and continuing risk of identity theft-related harm and are thereby entitled to recover compensatory damages in an amount according to proof at trial pursuant to California Civil Code  section 1798.84(b).

## FIFTH CAUSE OF ACTION

**Violation of the California Consumer Protection Act**

**[Cal. Civil Code § 1798.100, *et seq*.]**

**(On behalf of PLAINTIFF and the California Subclass)**

161.  PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

162.  Pursuant to the California Consumer Protection Act ("CCPA"), Civil Code section 1798.150(a)(1), "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages,

---

[30] *See* Sample Notice Letter.

injunctive or declaratory relief, and any other relief the court deems proper.

163.  PLAINTIFF and the California Subclass are consumers and California residents as defined by Civil Code section 1798.140(i).

164.  DEFENDANTS are businesses as defined by Civil Code section 1798.140(d)(2).

165.  PLAINTIFF's and the California Subclass' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure.  The Data Breach, as detailed herein, compromised, without limitation, PLAINTIFF's and the California Subclass' names, Social Security numbers, and dates of birth.

166.  DEFENDANTS failed to maintain PLAINTIFF's and the California Subclass' PII in a form that prevented cyberhackers from accessing and infiltrating it.

167.  The Data Breach occurred as a result of DEFENDANTS' failure to implement and maintain reasonable security procedures and practices for protecting PII according to industry standards and federal, state, and local laws and regulations.  Moveover, DEFENDANTS failed to safeguard PLAINTIFF's and the California Subclass' PII in accordance with their own internal policies.  Such failure resulted in the unauthorized access of PLAINTIFF's and the California Subclass' PII.

168.  PLAINTIFF provided written notice to DEFENDANTS identifying the CCPA provisions that DEFENDANTS violated as required under Civil Code Section 1798.150(b).

169.  On behalf of the California Subclass, PLAINTIFF seeks actual pecuniary damages and injunctive relief in the form of an order enjoining DEFENDANTS from continuing to violate the CCPA.  Unless and until DEFENDANTS are prohibited Court order from engaging in the unlawful behavior detailed herein, their wrongful conduct will continue to cause irreparable injury to

PLAINTIFF and the California Subclass.

170.   If DEFENDANTS do not timely rectify or otherwise cure the CCPA violations described herein and in PLAINTIFF's letter to DEFENDANTS, PLAINTIFF intends to, and reserves the right to, amend this complaint to seek statutory damages and any other relief the Court deems proper as a result of DEFENDANTS' CCPA violations, pursuant to Cal. Civ. Code section1798.150(a).

## SIXTH CAUSE OF ACTION

### Unfair Competition Law

### [Cal. Bus. & Prof. Code § 17200, *et seq*.]

### (On behalf of PLAINTIFF and the California Subclass)

171.   PLAINTIFF incorporates herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

172.   The California Unfair Competition law, California Business & Professions Code section 17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

173.   By reason of DEFENDANTS' above-described wrongful action, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of PLAINTIFF's and the California Subclass' PII, DEFENDANTS engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

174.   DEFENDANTS' above-described wrongful action, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of PLAINTIFF's and the California Subclass' private information also constitute "unfair" business acts and practices withing the meaning of Business & Professions Code sections 17200 *et seq*., in that DEFENDANTS' conduct was substantially injurious to PLAINTIFF and the California Subclass, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of

DEFENDANTS' conduct outweighs any alleged benefits attributable to such conduct.

175.    DEFENDANTS engaged in unlawful acts and practices with respect to the services it provides by establishing the sub-standard security practices and procedures described herein which resulted in the Data Breach and exposure of PLAINTIFF's and the California Subclass' PII; and by acquiring, collecting, and storing PLAINTIFF's and the California Subclass' PII, with or without their permission, and without their knowledge that the information would not be adequately protected; by violating the other statutes described above; and by storing PLAINTIFF's and the California Subclass' PII in an unsecure electronic environment.

176.    DEFENDANTS' practices were also unlawful and in violation of Civil Code sections 1798, *et seq*. and DEFENDANTS' own privacy and cybersecurity policies because DEFENDANTS failed to take reasonable measures to protect PLAINTIFF's and the California Subclass' private information and failed to take remedial measures such as notifying their users when they first discovered that their private information may have been compromised.

177.    In addition, DEFENDANTS engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Civil Code section 1798.82.

178.    PLAINTIFF and the California Subclass suffered, and continue to suffer, injury in fact and lost money or property as a direct and proximate result of DEFENDANTS' above-described wrongful actions, inactions, and omissions including, inter alia, the unauthorized release and disclosure of their PII.

179.    If PLAINTIFF and the California Subclass were aware of DEFENDANTS' security failures, PLAINTIFF and the California Subclass would have insisted that their private information be more securely protected.

180.    As a direct and proximate result of DEFENDANTS' above-described

wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of PLAINTIFF and California Subclass' private information, they have been injured by, inter alia: (i) the loss of opportunity to control how their private information is used; (ii) the diminution in the value and/or use of their private information entrusted to DEFENDANTS; (iii) the compromise, publication, and/or theft of their private information; and (iv) costs associated with monitoring their private information, amongst other things.

181.   PLAINTIFF takes upon himself enforcement of the laws violated by DEFENDANTS in connection with the reckless and negligent disclosure of their private information.  There is a financial burden incurred in pursing this action, and it would against the interests of justice to penalize PLAINTIFF by forcing him to pay attorneys' fees and costs from the recovery in this action.  Therefore, an award of attorney's fees and costs is appropriate under Code of Civil Procedure section 1021.5.

## SEVENTH CAUSE OF ACTION

### Invasion of Privacy

### (On behalf of PLAINTIFF and the California Subclass)

182.   PLAINTIFF incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

183.   PLAINTIFF and the California Subclass have a legal protected privacy interest in their private information that DEFENDANTS acquired, collected, and stored.

184.   California established the right to privacy in Article I, section I of the California Constitution.

185.   The State of California recognizes the tort of Intrusion into Private Affairs, and adopts the formulation of that tort found in the Restatement (Second) of Torts which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
> Restatement (Second) of Torts § 652B (1977)

186.   PLAINTIFF and the California Subclass reasonably expected that their private information would be protected and secured from unauthorized parties, would not be disclosed to any unauthorized parties, or disclosed for any improper purpose.

187.   Because DEFENDANTS acquire, collect, and store sensitive personal information in the course of their business, including PLAINTIFF's and the California Subclass' PII, DEFENDANTS owed a duty to PLAINTIFF and the California Subclass to keep their private information confidential.

188.   The unauthorized release of private information, especially the type related to personal financial information such as PLAINTIFF's and the California Subclass PII that was exposed as a result of the Data Breach, is highly offensive to a reasonable person.

189.   The intrusion was into a place or thing, which was private and is entitled to be private.  Indeed, the PII that was compromised in the Data Breach constitutes highly sensitive and confidential information.  PLAINTIFF and the California Subclass were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

190.   The Data Breach constitutes an intentional interference with PLAINTIFF's and the California Subclass' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

191.   DEFENDANTS acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate and would likely result in a data breach such as the one that harmed PLAINTIFF and the California Subclass.

192.   DEFENDANTS unlawfully invaded the privacy rights of PLAINTIFF and the California Subclass by (i) failing to adequately secure their private information from disclosure to unauthorized parties for improper purposes; (ii) disclosing their private information to unauthorized parties in manner that is highly offensive to a reasonable person; and (iii) disclosing their private information to unauthorized parties without the informed and clear consent of PLAINTIFF and the California Subclass.  The invasion into the privacy interest of PLAINTIFF and the California Subclass is serious and substantial.

193.   In failing to adequately secure PLAINTIFF's and the California Subclass' PII, DEFENDANTS acted in reckless disregard of their privacy rights. DEFENDANTS knew or should have known that their substandard data security measures are highly offensive to a reasonable person in the same position as PLAINTIFF and the California Subclass.

194.   DEFENDANTS violated PLAINTIFF's and the California Subclass' right to privacy under the common law as well as under state law, including the California Constitution, Article I, Section I.  As a direct and proximate result of DEFENDANTS' unlawful invasions of privacy, PLAINTIFF's and the California Subclass' PII has been viewed or is at imminent risk of being viewed and misused, and their reasonable expectations of privacy have been intruded upon and frustrated.  PLAINTIFF and the California Subclass have suffered injury as a result of DEFENDANTS' unlawful invasions of privacy and are entitled to appropriate relief.

## **EIGHTH CAUSE OF ACTION**

### **Declaratory and Injunctive Relief**

### **(On behalf of PLAINTIFF and the Class)**

195.   PLAINTIFF incorporate herein by specific reference, as though fully set forth, the allegations in the foregoing paragraphs.

196. PLAINTIFF pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. section 2201.

197. DEFENDANTS owes a duty of care to PLAINTIFF and the Class that requires them to adequately secure PLAINTIFF's and the Class' PII.

198. DEFENDANTS failed to fulfill their duty of care to safeguard PLAINTIFF's and the Class' PII.

199. PLAINTIFF and the Class are at risk of harm due to the exposure of their PII and DEFENDANTS' failure to address the security failings that lead to such exposure.

200. PLAINTIFF, therefore, seek a declaration that (i) DEFENDANTS' existing security measures do not comply with their explicit or implicit obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect personal information, and (ii) to comply with their explicit or implicit obligations and duties of care, DEFENDANTS must implement and maintain reasonable security measures, including, but not limited to:

  a. Engaging third-party security auditors/penetration testers as well as internals security personnel to conduct testing, including simulated attacks, penetration tests, and audits on DEFENDANTS' systems on a periodic basis, and ordering DEFENDANTS to promptly correct any problems or issues detected by such third-party security auditors;

  b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

  c. Auditing, testing, and training their security personnel regarding any new or modified procedures;

  d. Segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised,

hackers cannot gain access to other portions of DEFENDANTS' systems;

e. Conducting regular database scanning and security checks;

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Purchasing credit monitoring services for PLAINTIFF and the Class for a period of 10 years; and

h. Meaningfully educating PLAINTIFF and the Class about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, individually and on behalf of all the CLASS MEMBERS, respectfully requests that the Court enter judgment in his favor and against DEFENDANTS as follows:

1.    For an Order certifying the class and subclass as defined herein, and/or any other appropriate subclasses, and appointing PLAINTIFF and his Counsel to represent the classes and subclasses;

2.    For equitable relief enjoining DEFENDANTS from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of PLAINTIFF's and CLASS MEMBERS' PII, and from refusing to issue prompt, complete, and accurate disclosure to PLAINTIFF and CLASS MEMBERS;

3.    For equitable relief compelling DEFENDANTS to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to PLAINTIFF and CLASS MEMBERS the type of PII compromised;

4.    For injunctive and declaratory relief requested by PLAINTIFF as

necessary to protect the interest of PLAINTIFF and CLASS MEMBERS, including but not limited to an order:

    a. Prohibiting DEFENDANTS from engaging in the unlaw and unfair practices described herein;

    b. Requiring DEFENDANTS to protect, through encryption, all data acquired, collected, and stored in the course of their business in accordance with applicable federal, state, and local laws and regulations and industry standards;

    c. Requiring DEFENDANTS to delete, destroy, and purge the PII of PLAINTIFF and CLASS MEMBERS unless DEFENDANTS for the retention and use of such information when weighed against the privacy interests of PLAINTIFF and CLASS MEMBERS;

    d. Requiring DEFENDANTS to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of PLAINTIFF and CLASS MEMBERS;

    e. Prohibiting DEFENDANTS from maintaining the PII of PLAINTIFF and CLASS MEMBERS on a cloud-based database;

    f. Requiring DEFENDANTS to engage third-party security auditors/penetration testers as well as internals security personnel to conduct testing, including simulated attacks, penetration tests, and audits on DEFENDANTS' systems on a periodic basis, and ordering DEFENDANTS to promptly correct any problems or issues detected by such third-party security auditors;

    g. Requiring DEFENDANTS to engage third-party security auditors and internal personnel to run automated security monitoring;

    h. Requiring DEFENDANTS to audit, test, and train their security personnel regarding any new or modified procedures;

i.  Requiring DEFENDANTS to segment their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of DEFENDANTS systems;

j.  Requiring DEFENDANTS to conduct regular database scanning and security checks;

k.  Requiring DEFENDANTS to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

l.  Requiring DEFENDANTS to purchase credit monitoring services for PLAINTIFF AND CLASS MEMBERS for a period of ten years; and

m. Requiring DEFENDANTS to meaningfully educate PLAINTIFF and CLASS MEMBERS about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

5.  For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

6.  For an award of punitive damages and treble damages, in an amount to be determined at trial;

7.  For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

8.  For such further relief that the Court may deem just and proper.

///

///

///

///

1    DATED: September 9, 2025           Respectfully submitted,

2                                       **MATERN LAW GROUP, PC**

3

4                            By:    _/s/ Deanna S. Leifer_

5                                   MATTHEW J. MATERN
                                    DEANNA S. LEIFER
6                                   KRISTEN B. DOYAN
                                    Attorneys for Plaintiff DURANT
7                                   MCLEOD, individually and on behalf of all
                                    others similarly situated
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2           PLAINTIFF, individually and on behalf of all others similarly situated,

3  hereby demands a jury trial to all issues so triable.

4

5  DATED: September 9, 2025        Respectfully submitted,

6

7                     **MATERN LAW GROUP, PC**

8

9             By:   */s/ Deanna S. Leifer*

10                     MATTHEW J. MATERN
DEANNA S. LEIFER

11                     KRISTEN B. DOYAN
Attorneys for Plaintiff DURANT

12                     MCLEOD, individually and on behalf of all
others similarly situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28